The next case is 19-21-24, Olsen v. United States. Counsel, we're ready to hear you. Thank you, Your Honor. Good morning. My name is Tom Tosdell. With me are my colleagues Blair Dunn and Kevin Mosley. I'll be carrying the water on this argument for the plaintiffs. Thank you, Mr. Tosdell. I said thank you, Mr. Tosdell. We're ready to hear you. Thank you. What you have, Your Honors, is a case of first impression. Our individual clients lost their private property to the Dog Head Fire, and the focus of our case is that the workers who caused the fire were federal employees under the Cooperative Funds and Disclosure Act. Counsel, for purposes of determining employment with the U.S. Forest Service, is it appropriate for us to look at the traditional benefits and coverage of the respective governmental programs for employees, such as health insurance, eligibility for federal retirement benefits, or for other benefits that traditional employees of the Forest Service might have? I think not, because— On those kind of tests, you would flunk outright, correct? I don't like the word flunk, but I would— Well, I mean, yeah, that's—we don't want to get too close to college here, all right. I'm a long way from college. How about your argument would utterly fail on that type of a test? It would, Your Honor, and the test would be incorrect because Congress says the test is incorrect. All right. The test in the CFDA is twofold, and twofold only, and that is, did the workers work under the supervision of the Forest Service? Number one. And number two, was that work under supervision of the Forest Service mutually agreed to? And so you have the statutory language, which is plain and clear, and uses the word deemed, that the workers are deemed to not be federal employees except for purposes of the FTCA, if they meet those two conditions. All right. And so there's not only the plain language of a statute, but there's a plain language of congressional purpose, which is found in the record, in both the House report and the Senate report, found at Volume 5, page 1089 and 1095, which says this, and you can't get any more clear than this, quote, Section 2, which is 565A2, authorizes Forest Service personnel to supervise such cooperators and their employees in emergencies or otherwise as mutually agreed to, and in such cases, said cooperators and their employees would be covered under federal tort liability and work injury laws, but would not be considered federal employees for other purposes. You just can't get any more clear than that. And that is the congressional purpose of this statute. So we get to the conditions, the two conditions that I mentioned, the first being work under the supervision of the Forest Service, which is a fact issue. Did or did not the workers work under the Forest Service supervision? The word supervise has a common sense and dictionary definition of to oversee, direct, or manage work, and both sides agree that the Supreme Court test and LOGE, L-O-G-E is the applicable one, and that test is the critical factor, this is a Supreme Court talk and not me, is the authority of the principal to control the detailed performance of the contractor. And the cases put it a little bit of a different way, but it's the same thing, and that other way is whether the government has control only of the end result or the manner and method of reaching the result. So if you look at the district court findings, factual findings, the district court factual findings do not square with the district court's conclusion of no supervision. If you look at the district court's factual findings, they compel, I believe, the answer that these workers worked under the supervision of the Forest Service. Well, it depends largely on what supervision means, right? For instance, the crew members who are in charge of thinning the forest and so forth don't even, they say that they very seldom saw Mr. Johnson even out there. So there's this broad supervision, here's unit four, and we want you to work on unit four and do X, Y, Z, but Mr. Johnson's not on the ground supervising each tree as it's cut and so forth. Right, right, but if you take a look at this kind of work, you have workers out in the forest cutting trees. There's no need and no opportunity and no reason for somebody to be standing over workers saying, cut this tree, don't cut that tree, but that is essentially what the Forest Service did because Mr. Johnson admitted to being out there 50 or more times. There are documents that he wrote instructing forest workers what to do. When a foreman wasn't there, he instructed the workers what to do. You may have workers saying that he was not there that often, but you have other workers saying that he came out frequently and put it all together. If you look at all of it together, and I'm talking about the factual findings of the district court, the governing documents and the verbal instructions say that the partner, that's the Pueblo, will cut these trees in this fashion, will not cut those trees, will cut these other trees in this fashion, the maximum slash depth will be 18 inches, the crew has to follow a 27-page silvicultural prescription. Silviculture means forestry. Counsel, if I may, because your argument is drifting a bit here, what was the cause of the fire? The masticator, which is a high energy... A piece of equipment caused a spark, correct? The masticator has a rolling drum of steel tooth, titanium tooth drum. It was rolling through high on fire, and when the masticator operator saw the fire, he was unable to get to it to extinguish it because he had a fire extinguisher in his machine. What does supervision have to do with this? Well, that's the question of causation, Judge. I mean... That's right, it's a question of causation, and the supervision seems to me has little, if any, relationship to the cause of the fire here, which was equipment basically hitting a rock and creating a spark and starting a fire. I mean, it just seems to me that you're trying to somehow say that that is due to improper supervision, but I don't see the connection. I don't see... Well, it's a two-stage test. Were they federal employees? That's where supervision comes in, and if they were federal employees, then if they caused the fire, doesn't matter if the supervisor caused the fire or not. If they're federal employees, it's strict liability? No, sir, it's negligence liability. It's negligence liability. Well, where's the negligence? Well, we didn't get there because we got thrown out by the district court on the federal employee status. All right, thank you. Yeah. Counsel, so you brought up the agreement between the Pueblo and the Forest Service. Doesn't the agreement purport to take you out of the CFDA? So the CFDA says we're going to deem the cooperator as a federal employee for Forest Service says that they're not going to be federal employees. Does the CFDA prohibit the parties from agreeing that the cooperator won't be a federal employee? I think an act of Congress prevails over a self-protective clause in the contract 100% of the time. You can't have a party, a Forest Service obviate an act of Congress by putting a water plate provision in the contract. Otherwise, you have it all the time everywhere. It would be extra record, but you probably do have it all the time everywhere. I would guarantee that, your honor. I would guarantee that. But the act doesn't deem the cooperators to be federal employees every single time. It just leaves it open for the parties to in a given instance. That would explain why the statute or why the contract goes one way or the other here. It said they're not. Well, you end up in a circle with that kind of perspective on it, your honor, because you have an act of Congress that says, if these two conditions are met, then there is a federal employment status. If the contract says, well, they're not federal employees, that contract is obviating an act of Congress. It all depends on what that act of Congress says. You're reading it to say that they shall be deemed to be federal employees every time. I'm proposing a different reading, which is it's possible for them to be federal employees for purposes of the Tort Claims Act, but it doesn't have to be. That's when you all sort it out. I agree, but it's not between you all because our clients suffered the destruction of their private property as a result of the negligence causing this fire. They're not party to the contract, but they're protected under the Federal Tort Claims Act in circumstances under which they're protected. The purpose of this statute was to protect the public from cooperator negligence if the basic conditions were met. I think at this point, and I'm three minutes, I'll reserve for rebuttal. Reserved. May it please the court, Joshua DeSantos on behalf of the United States. Your honors, I'd like to concentrate on the CFDA issue that the court was just discussing. As Judge Phillips, you noted the statutory provision on which plaintiffs are relying does not in fact say that cooperators are always deemed to be employees of the United States for purposes of the Federal Tort Claims Act. Instead, the provision that they're referring to 5565A2 states that cooperators may work under the supervision of the Forest Service and that when they do so, there's a general prohibition on cooperators being considered employees, except as to two statutes which it leaves open, the Federal Tort Claims Act and the Federal Employees' Compensation Act. That provision does not modify the ordinary test that the Federal Tort Claims Act adopts for determining whether someone is an employee or an independent contractor. And waivers of sovereign immunity have to be expressed and unequivocal. So if there is more than one reading of the statute, that's the end of the inquiry. I'll also highlight that the test was correct. The court noted that under each of those factors, the tribe should not be considered an employee of the United States. At this point, I'd like to take any questions that the court may have. All right. So do you know of another case where there's been an admitted, I mean, it seems like there's no dispute that there was a negligent act. Do you agree with that? We haven't reached the negligence. I'm aware of the case. I'm not going to concede. Assume it was negligent. Do you know of another case where the people have sovereign immunity and the United States government has no liability under the Tort Claims Act? Your Honor, there are many, many cases in which injured persons are left without any remedy because the government has sovereign immunity under the Federal Tort Claims Act, given that there's a discretionary function or it was an independent contractor that caused it. Here, you're right that there's a contractor that may have been negligent, and normally a person could sue the contractor. And here the contractor may not have waived its sovereign immunity because it is itself a sovereign. But that does not distinguish this case from the many cases in which injured persons cannot recover against the United States under the Federal Tort Claims Act. It just makes me wonder if the part of the statute talking about cooperators being federal employees, if they're working under the supervision of the Forest Service, wasn't put in there for this type of reason because cooperators are frequently governmental entities or Indian tribes. Well, the cooperators may be Indian tribes and other sovereigns, but the provision that Your Honor is referring to is not saying that the cooperators always seem to be an employee of the United States. No, I get that that's your position, but I'm just wondering if that's not the intent of that provision, is to sweep these sovereigns into the scope of the statute to where they'll be considered federal employees. I don't believe so, Your Honor. Do you have any authority on that? I don't have any cases on that, but I think if one looks at the text, the intent here is to prohibition on consideration of cooperators as employees. The language says they shall not be considered employees for any purpose, and then just lays out a few exceptions, one of which is the Federal Employee Compensations Act, and the other of which is the Federal Tort Claims Act, and leaves those open. So it looks like the main intent of this provision was, one, to say expressly a cooperator may work under the supervision of the Forest Service in emergencies, or if they agree to it, and secondly, to enact a general prohibition with two exceptions. So it doesn't seem to me like this is the type of provision that is expressly trying to deem entities to be employees because those entities might be sovereigns. Congress has, in several other statutes, expressly deemed Indian tribes' workers, for example, to be employees. And the language there is very clear. It says they shall be deemed federal employees for the purposes of the Federal Tort Claims Act. That is not what Congress did. Well, Judge Carson's question really does put the finger on it, and that is, it seems somewhat anomalous to say that a contractor is entitled to qualified immunity, and at the same time, say that the contractor is neither subject to supervision nor considered an employee. It basically creates a zone of protection which is, it seems to me, entirely inappropriate insofar as the general public is concerned. It's almost an invitation to commit negligent acts without any liability whatsoever. It sounds like the perfect crime situation. Why don't we have that situation here? Your Honor, it is a long-standing principle that sovereigns may only be held liable when they are not. It isn't very different from the ordinary course of things. We are not here pressing that the tribe is immune. We are only pressing that under the Federal Tort Claims Act, the government is not liable because the tribe was, in effect, an independent contractor. So if they committed negligence to the extent that plaintiffs can bring them to court, they may, the tribe may be immune based on its own sovereign immunity because it is another sovereign. But that has no bearing on the question before the court under the Federal Tort Claims Act. Thank you. Unless this court has any other questions. Well, Jerry Nutt, we thank you for... Thank you very much. ...the rest of your time. We appreciate it. Thank you, counsel. Counsel, you did have some time. Thank you, Judge. What I'd like to do is focus on the clear language of the statute. Somehow this case has spun off into a variety of alleys that, in my view, are dead ends. If we stick to the plain language of statute and the plainly stated purpose of Congress, then it becomes a factual question about whether the two conditions for federal employee status are met. It's not that the statute requires all cooperator employees to be federal employees. It's that the statute requires cooperator employees who work under the supervision of the Forest Service as mutually agreed to are federal employees. In this particular case, you could not find a greater level of control of the performance of the details of the work than you have in this case. What if a crew member were late to work five days in a row and the employer of sort decided no more of you? Who was it that made the call to fire him? Is it the federal government, the Forest Service, or is it the cooperator? I think it initially would be the Pueblo, but it could also be the Forest Service had the right to to take all sorts of punitive action under the contract. So, it would be the Pueblo responsible for managing the employees? Well, no, because... Well, if someone's not thinning and so forth well enough or is late on lunch and just isn't cutting what's required of that job, it sounds like it's the Pueblo that's responsible for removing that person, not the Forest Service. Well, Judge, the question is not who is responsible for taking an employee off the work. The question is whether the employees worked under the supervision of the Forest Service. And if the Forest Service, as the load test requires, controls the detailed performance of the work, that is the end of the story. If you can't pick out one little part of the employment relationship and say, oh, they're not employees because the Pueblo deals with them if they don't show up for work. The question is very simply stated in the statute. And that is work under the supervision. And they worked under the supervision with the agreement of the Forest Service because they did it for years without objection. And they did what they were told day in, day out, month in, month out, year in, year out. Up, I'm out. Thank you. If there are questions, we'll continue. But I hear none. Judge Carson? No, thank you. All right. Judge Phillips? Hearing no questions, then the council are excused. The case is submitted.